UNITED STATES of America,

v.

James L. BOULER.

No. 3:92CR37–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 9, 1996.

Frank D. Whitney, Charlotte, NC, for Plaintiff.

James F. Wyatt, III, Michael S. Scofield, Charlotte, NC, for Defendant.

### ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the motion of Cornell Bouler ("Bouler") to intervene and/or vacate an order of this Court forfeiting certain real property to the United States.[1] For the reasons stated herein, that motion will be granted in part.

---

1. Hattie M. Bouler is also before this Court as    attorney-in-fact for Cornell Bouler. But since

## I. BACKGROUND

The background for this proceeding is the conviction of Cornell Bouler's brother, James L. ("Slim") Bouler for conspiracy to launder the proceeds of cocaine trafficking and illegal lottery operations in violation of 18 U.S.C. § 371, money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and engaging in a monetary transaction using criminally derived property in violation of 18 U.S.C. § 1957(a). Pursuant to that conviction Slim stipulated to the forfeiture of $197,730 of assets, and the Government sought the forfeiture of certain property listed in the bill of indictment, including the real property located at Route 1, Whitestore Road, Marshville, North Carolina.

This Court entered an order of forfeiture which included the Whitestore Road property on February 22, 1993. That forfeiture order was entered pursuant to a stipulation by Slim Bouler that $197,730 of his assets were subject to forfeiture, and it also followed a grand jury bill of indictment which found that the Government could not locate much of the property used in Slim Bouler's criminal offenses so that forfeiture of his other assets such as the Whitestore Road property was appropriate; a judgment which this Court ratified as required by 21 U.S.C. § 853(p). Pursuant to that order, notice of the Government's intent to forfeit the property was published in the *Mecklenburg Times,* a paper used for legal notices, on April 2, 9, & 16, 1993. This Court entered a final judgment forfeiting that property to the United States by order dated June 29, 1993. Although Cornell Bouler holds record title to the Whitestore Road property, the Government never provided any notice to Bouler about its intent to forfeit and dispose of that property.

The forfeiture of the real property at Whitestore Road is the subject matter of this dispute. Cornell Bouler is now before this Court seeking relief from the order of forfeiture. According to Cornell, he is the real owner of this property and he has produced a warranty deed which shows that he became the record owner of the property on May 14, 1986. He wants an opportunity to show that he is the real owner so he can establish that the property is not properly forfeited to the United States pursuant to his brother's conviction.

Bouler's first problems are procedural. He never filed any claim when the Government published its notice of intent to forfeit the property, and the judgment of forfeiture is now almost three years old. According to Bouler, he did not file a claim because the Government never gave him notice that the property was going to be forfeited. As a result, he never had an opportunity to assert his interest. Bouler also claims that he did not know that the property was forfeited to the United States until the Government moved to evict his brother's tenants. According to Bouler, as soon as he learned of the forfeiture order he immediately moved to intervene in this case.

## II. DISPOSITION

Bouler has moved to intervene in this case and he seeks relief from the judgment of forfeiture pursuant to Fed.R.Civ.P. 60(b). Two issues are presented. First, whether Bouler's motion for relief from the judgment is timely. Second, whether Bouler has standing to challenge the judgment of forfeiture.

### A. Statutory Framework.

In this case, the Government seeks the forfeiture of the Whitestore Road property under 21 U.S.C. § 853. That section describes the property subject to forfeiture, see 21 U.S.C. § 853(a) & (b), and provides for the forfeiture of substitute assets under certain circumstances. See § 853(p). It also empowers federal courts to enter restraining orders, or injunctions, or to require performance bonds to preserve the availability of property subject to forfeiture under certain circumstances. See 21 U.S.C. § 853(e). Thus, the property is not automatically seized when it is subject to forfeiture under

Hattie Bouler has no basis for any claim to the property apart from Cornell's, this Court treats the two claimants as one.

§ 853. *See U.S. v. Daniel Good Real Property*, 510 U.S. 43, 62 n. 3, 114 S.Ct. 492, 505 n. 3, 126 L.Ed.2d 490 (1993). Rather, a warrant of seizure may be issued in cases where the Government establishes, *inter alia*, probable cause to believe that an order entered under § 853(e) may not be sufficient to assure the availability of the property for forfeiture. 21 U.S.C. § 853(f). A court imposing a sentence upon a person found in violation of the provisions specified in § 853(a) must order property described in that subsection forfeited to the United States, and upon entry of an order of forfeiture the Court must authorize the Attorney General to seize all property so forfeited. See 21 U.S.C. § 853(a) and (g).

This dispute fits under the provisions of 21 U.S.C. § 853(n) which concerns third-party interests and the procedures that govern such claims in forfeiture actions brought under § 853. The express provision dealing with the notice issue is § 853(n)(1) which provides:

> Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

21 U.S.C. § 853(n)(1). Section 853(n) allows persons with an interest in the property to assert a claim within thirty days of the final publication of the notice or his receipt of notice under subsection (n)(1), see § 853(n)(2) & (3), and provides procedures for a hearing to govern the determination of such claims, see § 853(n)(2), (4) & (5). The statute also provides that if a petitioner establishes that he has an interest described in § 853(n)(6)(A) or (B), the Court shall amend its forfeiture order to reflect that determination. *Id.*

The statutory procedures set forth in § 853(n) are not the only procedures that govern such claims, for the section also provides that "[e]xcept to the extent that they are inconsistent with the provisions of this section, the provisions of section 881(d) of this title shall apply to a criminal forfeiture under this section." 21 U.S.C. § 853(j). Section 881(d), in turn, provides that:

> The provision of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

21 U.S.C. § 881(d). Thus, § 881(d) references the procedures set forth in Title 19. See 19 U.S.C. § 1600.

The procedures set out in 19 U.S.C. § 1602–19 govern all seizures made by customs officers with exceptions not relevant here. 19 U.S.C. § 1600. These provisions provide, *inter alia*, that seized property is appraised, see 19 U.S.C. § 1606, and the procedures employed depend upon the appraised value of the property. If the property is valued at $500,000 or less, then § 1607 applies, and if the seized property satisfies the conditions set forth in § 1607(a)(1)–(4) then:

> the appropriate customs officer shall cause a notice of the seizure of [the property] and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized [property].

19 U.S.C. § 1607(a). The statute then provides means through which a person may claim an interest in the seized property and, upon submission of a claim, the case is transferred to the U.S. Attorney for the district in which the property was seized so he can proceed with the condemnation of the property "in the manner prescribed by law." 19 U.S.C. § 1608. Absent such a claim, the property is forfeited to the United States wherein title vests. 19 U.S.C. § 1609. If

property does not fall within the scope of § 1607, then the statute provides for judicial forfeiture, see 19 U.S.C. § 1610, and it appears that the Supplemental Rules for Certain Admiralty Claims would govern these cases.

### B. *Statutory Notice Requirements.*

In this case, Bouler alleges that his substantial delay in filing this claim is excused by his lack of notice as to the effect of the forfeiture judgment. Therefore, as an initial matter the Court must determine the notice that Bouler is entitled to receive; because if Bouler received sufficient notice then he cannot bring an untimely claim.

As the Government indicates, the starting point for this inquiry is the statute. Here, the Government asserts that 21 U.S.C. § 853(n)(1) sets forth all the notice that Bouler is entitled to receive under the statute. The Government has published notice as required by § 853(n)(1) and therefore, the argument goes, that is the end of the matter.

The Government's reading of the statute is questionable. Although 21 U.S.C. § 853(n)(1) does set forth certain notice procedures, those procedures are not the sum total of procedural protections that apply to forfeitures under that section. Section 853(j) incorporates the provisions of 21 U.S.C. § 881(d), and that section incorporates the procedures set forth in Title 19. As noted, 19 U.S.C. § 1600 et seq. creates a two-track system for forfeitures. Summary forfeiture is available under § 1607 if the procedural requirements of that section are satisfied. And in cases where the summary forfeiture is challenged by a claimant, or § 1607 does not apply, then judicial forfeiture is required and the Supplemental Rules for Admiralty and Maritime Claims apply. See 19 U.S.C.

§§ 1608 & 1610; *cf.* 21 U.S.C. § 881(b) (Supplemental Rules apply to forfeitures under § 881 with exceptions set forth in § 881(b)(1)–(4) and these claims are governed by procedures of Title 19 pursuant to § 881(d)).

If the procedural protections of Title 19 apply to forfeitures under 21 U.S.C. § 853(n) by virtue of § 853(j), then the Government would be required to satisfy the procedural requirements of 19 U.S.C. § 1607(a). In this case, the Government would be obliged to comply with 19 U.S.C. § 1607 because the value of the property is below $500,000. 19 U.S.C. § 1607(a)(1). That section requires the Government to publish notice as the Attorney General may direct and provides that "[w]ritten notice of the seizure ... shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a).

Whether the requirements of 19 U.S.C. § 1607(a) apply to forfeitures under 21 U.S.C. § 853 depends upon whether the requirements set forth in § 1607(a) are inconsistent with the provisions of § 853(n), so the differences between the sections become important. There are three principal differences between the sections. First, § 853(n)(1) is triggered by the order of forfeiture which does not occur until the sentencing of the criminal defendant, see 21 U.S.C. § 853(a), and the property is not seized until that order of forfeiture absent extraordinary circumstances. See § 853(g) & (f).[2] In contrast, the notice requirement created by 19 U.S.C. § 1607 is triggered by the seizure of the property. Second, under § 853(n) the Government's duty to provide "direct written notice" is discretionary, whereas the notice requirement created by § 1607 is mandatory.[3] Third, § 853(n)(1) en-

---

**2.** Therefore, in cases where the property was seized under § 853(f) the procedures set forth in § 853(n)(1) do not apply and the procedures set forth in Title 19 will apply because § 853(n) provides no procedures that could conflict with those set forth in 19 U.S.C. § 1600 *et seq.* thereby implicating the limitation set forth in § 853(j).

**3.** Although the language of § 853(n) is discretionary it would be a mistake to think that the Government's duty to give notice is truly optional if it wants orders of forfeiture to provide the

certainty necessary to promote the final disposition of the property. *See e.g. Aero–Medical, Inc. v. U.S.*, 23 F.3d 328 (10th Cir.1994) (holding that notice of forfeiture was invalid where the Government provided notice by publication and mailing to last known address of claimant although it knew that claimant had changed addresses and knew identity of claimant's agent who was not given notice); *Torres v. $36,256.80*, 25 F.3d 1154 (2nd Cir.1994) (notice by mailing to last known home address and address of incarceration inadequate where mailings were re-

courages the Government to serve notice on "any person known to have alleged an interest in the property" whereas § 1607(a) requires the Government to sent written notice to "each party who appears to have an interest in the seized article." [4]

■ Although the question is a close one, the Court believes that the notice procedures set forth in 19 U.S.C. § 1607(a) apply to forfeitures under § 853. Under this reading of the statutes, when an order of forfeiture issues pursuant to § 853(a) and the property is seized pursuant to an order of forfeiture under § 853(g), several notice requirements are triggered. First, the Government must publish notice as required by 21 U.S.C. § 853(n)(1) and 19 U.S.C. § 1607(a). Second, the Government must send notice of its intent to forfeit the property to any person who appears to have an interest in the property as provided for under 19 U.S.C. § 1607(a).[5] Third, the Government may, to the extent practical, send notice to persons known to have alleged an interest in the property as required by § 853(n)(1).

This reading of the provisions is preferable for several reasons. First, there is no direct conflict between the heightened notice requirement set up by 19 U.S.C. § 1607 and the requirements of § 853(n) which would preclude the incorporation of § 1607's procedure into § 853 pursuant to § 853(j). Indeed, § 853 seems to contemplate just such a result because it provides only for notice by publication and merely recommends direct notice to those known to have "alleged an interest in the property"—a class of persons that will be small indeed if publication by notice is the only notice ever given. In short, § 853(n)'s truly *de minimis* requirements indicate that Congress did not intend § 853(n) to be the only notice requirements that apply to such forfeitures, especially when the requirements of § 853(n)(1) are compared to the more reasonable and efficacious procedures set forth in § 1607.[6] Also, this reading of the provisions brings the procedures employed regarding forfeitures under § 853 into closer harmony with the approach employed for forfeitures under 21 U.S.C. § 881(b). Section 881(b) provides that the Supplemental Rules govern forfeitures brought thereunder with the exceptions set forth in § 881(b)(1)–(4) which are governed by the procedures set forth in Title 19 pursuant to § 881(d).

■ The *de minimis* nature of § 853(n)'s notice requirements and the enhanced notice required when the procedures set forth in 19 U.S.C. § 1607(a) are used to supplement the notice provided under § 853(n) point to another virtue of this reading of the statute; it avoids the need to consider whether § 853(n)(1) violates the Due Process Clause of the Constitution. For there seems to be no real doubt that notice by mere publication does not satisfy the Due Process Clause

turned to sender and the Government could have easily ascertained location of claimant/prisoner); *U.S. v. Woodall*, 12 F.3d 791, 793 (8th Cir.1993) (notice to home and jail address inadequate where court had released claimant on bond to a different residence known to the Government and no notice was mailed to correct address or claimant's attorney).

**4.** The Court notes that under § 853(n)(1) the Government need only supply direct written notice "to the extent practicable" whereas § 1607(a) contains no such limitation. However, the Court believes that the Due Process Clause informs both statutory sections defining (and limiting) the Government's duty to what is reasonably practical under the circumstances. *See e.g. Aero–Medical, Inc. v. U.S.*, 23 F.3d at 330–31 (discussing scope of duty created by 19 U.S.C. § 1607 in light of the requirements created by the Due Process Clause); *see also Torres v. $36,-256.80*, 25 F.3d at 1160–61; *U.S. v. Woodall*, 12 F.3d at 794.

**5.** Section 1607 requires the Government to give notice to each "party" who appears to have an interest in the property; but that section appears to use party in a non-technical sense; and, at any rate, when § 1607 is applied to cases under 21 U.S.C. § 853 as required by § 853(j), the term must be read to mean person, since the whole purpose of § 853(n) is to allow persons to become parties to the forfeiture action by intervening.

**6.** The Court notes that the Attorney General's conduct in this case indicates that she has relied upon § 1607 to inform the notice given under § 853(n)(1), for the draft order submitted by the Government required the publication of notice once a week for three weeks—an express requirement of 19 U.S.C. § 1607 not mentioned in 21 U.S.C. § 853(n)(1).

where the identity of a person having an interest in property is readily ascertainable and that person can be notified by mail at his last known address. *See e.g. Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (and cases cited therein) [7]; *U.S. v. Borromeo*, 945 F.2d 750, 752 (4th Cir.1991) (*dicta*); *cf. U.S. v. Estevez*, 845 F.2d 1409 (7th Cir.1988) (inadequacy of statutory notice is excusable neglect under Fed.R.Civ.P. 60(b)). Here, Cornell Bouler was the holder of record title such that his identity was reasonably ascertainable. But the Government made no effort to ascertain his identity or to provide him with actual notice of the forfeiture. Therefore the Court finds that the Government did not satisfy the statutory notice requirements applicable to forfeitures under 21 U.S.C. § 853.

### C. *Standing.*

■ The Court believes that the Government's failure to provide the notice required by 19 U.S.C. § 1607 is relevant to Cornell Bouler's motion. That motion is made pursuant to Fed.R.Civ.P. 60(b), and Bouler seeks to intervene in the underlying criminal proceeding that led to his brother's conviction under 21 U.S.C. § 853(k) so he can ask this Court to modify its order of forfeiture pursuant to § 853(n)(6)(A).[8] Bouler argues that the judgment is void because he did not receive notice of the forfeiture, but that is not correct—Slim Bouler's conviction is final and the order of forfeiture is certainly binding as to Slim, and it is binding as to all the world with respect to the other properties forfeited by the order. Cornell's claim does not undermine the whole order of forfeiture, but concerns only whether that order should be amended to take account for his interest as contemplated by § 853(n)(6)(A), and the merits of his claim are independent of the underlying action against Slim from which the order of forfeiture arises. Thus, this dispute is more akin to one where a default

judgement has been entered against a party for their failure to appear or otherwise respond and the defaulted party seeks relief from the default judgment. Therefore, this Court believes his motion must be treated as one to obtain relief from that order within the meaning of Rule 60(b)(6). Such motions must be made within a reasonable time and relief may be granted upon such terms as are just. In this case, the Court concludes that Cornell Bouler's claim was brought within a reasonable time because Bouler's delay follows from the Government's failure to provide a record title holder with notice of the forfeiture. *Cf. U.S. v. Estevez*, 845 F.2d 1409 (7th Cir.1988) (inadequacy of statutory notice is excusable neglect under Fed.R.Civ.P. 60(b)).

Although Cornell's motion is cognizable under Fed.R.Civ.P 60(b), his standing to pursue this claim is questionable. Several circuit courts have already recognized that a necessary prerequisite to pursuing claims to forfeited property is a threshold showing that the person owns the property. *See U.S. v. 526 Liscum Dr.*, 866 F.2d 213, 216–17 & n. 2 (6th Cir.1988); *U.S. v. Single Family Residence*, 803 F.2d 625, 630 (11th Cir.1986); *U.S. v. Lot 111–B*, 902 F.2d 1443 (9th Cir. 1990). The general approach was described by the Sixth Circuit, which held that:

> [w]hen the Government establishes probable cause to believe that a claimant is merely a nominal or straw owner ... a claimant cannot meet its burden of establishing standing to challenge a forfeiture by presenting proof of legal title alone. The claimant must also present evidence of dominion and control or other indicia of true ownership.

*526 Liscum Drive*, 866 F.2d at 217. This standing rule is "based on the candid determination that things are often not what they appear to be, especially in the world of drug trafficking...." In brief, people engaged in illegal activities often attempt to disguise

---

**7.** The Court need not consider whether notice in the *Mecklenburg Times* satisfies the requirements of due process in light of *Mennonite Bd., supra,* given the disposition of this case.

**8.** This Court has jurisdiction over this action whether it is viewed as a motion for intervention

under 21 U.S.C. § 853(n) or a collateral attack upon the forfeiture order. *See U.S. v. Woodall,* 12 F.3d at 793. In any event, the characterization of the motion does not affect the Court's analysis.

their interests in property by placing title in someone else's name. *U.S. v. Single Family Residence,* 803 F.2d at 630 (citations omitted). Thus here, as in other areas such as the First Amendment's overbreadth doctrine, courts adjust their standing analysis to accommodate reality. This Court believes that this standing rule comports with common sense and fair play, and it notes that the Fourth Circuit has indicated sympathy with this approach albeit in a non-binding disposition. *See U.S. v. 1077 Kittrell Street,* 90–7259, 947 F.2d 942, 1991 WL 227792 (4th Cir. Nov. 7, 1991) (unpublished).

■ In this case, the Government has produced substantial and unrebutted evidence which creates probable cause to believe that Slim Bouler is the actual owner of the Whitestore Road property and that Cornell is merely a "straw man" who holds title for his brother. For example, the Government has pointed out that other than the deed to the property, all of the documentary evidence, including construction and tax documents, indicate that Slim Bouler owned the property and was exercising dominion and control over the property. Slim Bouler sold drugs from the property and handled money-laundering transactions there. In addition, the Government has produced evidence that Slim never paid any rent to Cornell. In fact, Cornell Bouler's tax information indicates that he did not have the income necessary to pay for the property in the first instance. On or about the time that Slim Bouler entered prison, he contacted one Alice Ross and asked her whether she would like to move into "my [*i.e.* his]" house rent free and there is also evidence that Bouler held some of his other property in false names.

In contrast, the only evidence that Cornell Bouler has presented in favor of his claim of ownership to the Whitestore Road property is the mere fact that he holds record title, and that evidence is insufficient to satisfy the standing requirements of 21 U.S.C. § 853 or the Constitution as explained above. Also, the portion of the transcript cited by Government indicates that Slim Bouler testified that the property belonged to his brother. Therefore, in an abundance of caution, this Court will grant Bouler's motion to allow him to intervene in this proceeding and present his claim under 21 U.S.C. § 853(n).

**NOW, THEREFORE, IT IS ORDERED** that Cornell Bouler's motion to present a claim under 21 U.S.C. § 853(n) be, and hereby is, *GRANTED.*

**IT IS FURTHER ORDERED** that the Clerk set this matter for a hearing on **June 28, 1996 at 9:30 o'clock a.m.**

The Clerk is directed to certify copies of this Order to James L. Bouler and his attorney; Hattie M. Bouler, Cornell Bouler, and their attorney(s), and to the United States Attorney.